[Crim. No. 605.   Second Appellate District.—July 29, 1918.]

## THE PEOPLE, Respondent, v. GEORGE A. TINNEY et al., Appellants.

INTOXICATING LIQUORS—PURCHASE BY CLUB—SALE TO MEMBERS—VIO-LATION OF WYLLIE ACT.—Under section 14 of the Wyllie local option law, prohibiting the keeping of a place within no-license territory where alcoholic liquor is sold, served, or distributed, a club and its chairman of house committee and steward, as its agents, are guilty of a violation of the act, where the members of the club, which was located in no-license territory, desiring liquor, notified the steward, who ordered it from a wholesale liquor house, and the liquor was shipped to and charged to the club, and upon its arrival distributed among the members and payment therefor collected by the club, the liquor being kept either in a locker used in common, or placed indiscriminately with that of others in a refrigerator until served by the steward.

APPEAL from a judgment of the Superior Court of Imperial County.   Z. B. West, Judge.

The facts are stated in the opinion of the court.

Ault & Chase, and Dan V. Noland, for Appellants.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn, Deputy Attorney-General, and Jerry H. Powell, for Respondent.

SHAW, J.—Defendants, alleged to be acting as agents of the Loyal Order of Moose in the city of Calexico, were con-

victed of the violation of section 14 of what is known as the "Wyllie Local Option Act," which provides that "it shall be unlawful for any person, corporation, firm, company, association or club, within any no-license territory to keep, conduct or establish, as principal or agent, any place where alcoholic liquors are sold, served or distributed, or are kept for the purpose of sale or distribution, except as provided in section 16 hereof, . . . " It appears without contradiction from the evidence that in the city of Calexico, which was "no-license territory," there existed a lodge of a fraternal order known as Loyal Order of Moose No. 1623 which, for the use of its members, maintained in the rooms of a building separate from the meeting place of the lodge certain clubrooms, which were in the immediate charge of what was known as a house committee of which Tinney, the dictator of the lodge, was chairman, and wherein McCombs was employed as custodian or steward. In the rear of one of the rooms there was kept a long counter or bar, back of which was another bar upon which, on the night defendants were arrested, were numerous open bottles of liquor of various kinds, and hanging from the bar a government liquor license issued to the lodge. In the rooms at the time were found some seven barrels of whisky, wine, and beer. The evidence further conclusively shows that it was the practice for members desiring liquor to notify McCombs, who would order the same from some wholesale liquor house, which shipped it to the lodge, making a charge therefor, not against the member for whom it is claimed it was purchased, but against the lodge, which paid the seller therefor. Having thus purchased the liquor it was, upon delivery to the lodge at these clubrooms, distributed and served to the members, according to the kind and quantity ordered, and from whom payment therefor was collected by the lodge in accordance with statements rendered therefor. As desired, the beverage so acquired by a member, and which he kept either in a locker used in common with other members, or placed indiscriminately with that of others in a refrigerator for cooling, was served to him by McCombs, who, as custodian of the rooms, was paid a salary for his services by the lodge.

The contention of defendants is that such liquors as those served did not belong to the lodge, nor to defendants or either of them, but that they were purchased and owned by the members of the lodge, who kept lockers and receptacles wherein

the same were placed for the individual use of members who had purchased the same, and since, as held in *People* v. *Winkler*, 174 Cal. 133, [162 Pac. 109], the statute does not prohibit one in dry territory from purchasing intoxicating liquors outside of such territory and bringing them within such no-license territory for his own consumption, it was likewise permissible for the individual members of the lodge to employ the lodge or defendants as their agents to make such purchase and deliver, serve, and distribute the liquors to them at the clubrooms. So claiming, they contend that the court erred in refusing to instruct the jury to the effect that they should acquit defendants if they found that in the purchase and delivery of such liquors they acted as agents of the owners thereof who used it on the premises. The prosecution in the Winkler case was under section 13 of the act, which makes it unlawful to sell, furnish, distribute, or give away, within the boundaries of no-license territory, any alcoholic liquors, except in certain cases. The prosecution here had was under section 14 of the act, which makes it an offense to keep, conduct, or establish a place where alcoholic liquors are sold, served, or distributed, except as provided for in section 16 of the act, under which one is permitted to serve liquors at his own home to members of his family or to guests as an act of hospitality. No claim, however, is made that these clubrooms constituted the home of the members of the lodge. Moreover, in the Winkler case, wherein it was held that an agent was not guilty of a violation of the law in acting as the agent of another in the purchase of alcoholic liquors in license territory and bringing them within no-license territory, the transaction was had with the principal himself, who was the purchaser of the beverage in no-license territory. Not so, however, in this case, since it appears that the transaction, wherein the liquors were acquired outside of the city of Calexico, was one had between the seller and the lodge, which made the purchase and thereafter sold the liquors to members of the lodge, in kind and quantity as ordered. The fact that such sales were by the bottle or barrel makes it none the less an offense than if it had been sold by the drink. There was no privity of contract between the member acquiring liquor and the wholesale house in license territory which sold it to the lodge. Such house did not look to the member for payment, and there was no privity of contract between the two. The members looked to the lodge

in supplying them with liquor, and the lodge having received orders therefor, purchased such liquor from outside territory and *sold, distributed,* and *served* it to the members, thus bringing itself and defendants as its agents within the terms of section 14 of the statute which prohibits such business. Clearly, this clubroom was a place established and conducted by defendants as agents of the lodge for the sale, distribution, and service of alcoholic liquors. The entire scheme was a subterfuge calculated to evade the plain provisions of the law, and for this court to give countenance to the practice concededly carried on would nullify the law, both in letter and spirit.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.